UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SHARISSE CHAPLIN,

                             Plaintiff,          **REPORT AND RECOMMENDATION**

     v.                                              19-cv-3618 (DG) (ST)

TOWN OF HEMPSTEAD,

                             Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before this Court is a motion for summary judgment by the Town of Hempstead, New York ("Defendant") pursuant to Federal Rule of Civil Procedure 56. Sharisse Chaplin ("Plaintiff") is an employee of Defendant's Parks Department. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII") alleging discrimination on the basis of race and sex as well as retaliation. The Honorable Judge Diane Gujarati referred the motion to me for a Report and Recommendation. For the reasons below, I recommend Defendants' motion be GRANTED.

## BACKGROUND

Plaintiff has served as an employee of the Town of Hempstead, New York since 1985.[1]  E.D.N.Y. L.R. 56.1 Statement ¶ 2, ECF No. 55-1. For nearly her entire term of employment with the Defendant, Plaintiff has been employed within the Parks Department. *Id* at ¶ 4. During her career, Plaintiff has been a party in two previous lawsuits against Defendant, both of which were

---

[1] Plaintiff has had an extensive career with the Town of Hempstead spanning over four decades. E.D.N.Y. L.R. 56.1 Statement ¶ 2, ECF No. 55-1. The record contains evidence of Plaintiff's performance and experiences during her entire career, much of which is not relevant to this cause of action. For the sake of efficiency, this statement of factual background is limited to facts necessary to provide a Report and Recommendation on the motion for summary judgment before this Court.

1

settled. *Id* at ¶¶ 36-39; 56-61. Plaintiff's second lawsuit, which alleged retaliation, was settled in 2002. *Id* at ¶¶ 56, 61. In lieu of a monetary payment, Plaintiff's settlement agreement included a promotion plan from Recreation Aid to Park Foreman, later renamed Park Crew Chief, over a period of several years. *Id* at ¶¶ 61-69. Park Crew Chief is the title Plaintiff currently holds. *Id* at ¶ 69. Upon receiving her promotion to Park Crew Chief, Plaintiff was assigned to Roosevelt Pool Park, which would become Plaintiff's preferred park. *Id* at ¶ 70; Def. Mot. for Summ. J., Exhibit C, 123-24, ECF No. 54-3.

While Roosevelt Pool Park's pool is closed during the off-season, the park typically maintains a permanent crew to maintain the pool grounds and other park spaces and equipment during the off-season. E.D.N.Y. L.R. 56.1 Statement ¶ 73-74, ECF No. 55-1. However, in October of 2017, Defendant closed Roosevelt Pool Park for three months, assigning no permanent crew to the location. *Id* at ¶ 73. The entire staff at Roosevelt Pool Park was reassigned during the closure. *Id* at ¶ 74. Plaintiff was reassigned to Coes Neck Park. *Id* at ¶ 75.

While assigned to Coes Neck Park Plaintiff retained her title and salary and was expected to maintain the grounds at Roosevelt Pool Park despite the closure. *Id* at ¶¶ 77, 80. Also at Coes Neck Park was a fellow employee identified in the record only as "Michelle." *Id* at ¶ 81. During this time Plaintiff alleges she was told by her supervisor that she was merely a visitor at Coes Neck Park and that Michelle would frequently engage in efforts to undermine Plaintiff's authority. *Id* at ¶¶ 81-87. For example, Plaintiff was allegedly told by other Parks Department employees that Michelle had instructed them not to listen to Plaintiff. *Id* at 86. However, when complaining about these acts Plaintiff did not allege she was being targeted because of her race or gender and admits she never directly heard Michelle tell park staff not to listen to Plaintiff or refer to Plaintiff in a racially derogatory manner. *Id* at ¶¶ 84-86.

2

During the transfer period, Michelle twice brought two employees, Michael Porter and Edward Holly, to Roosevelt Pool Park while Plaintiff was working. *Id* at ¶ 89. Plaintiff had previously filed complaints against both employees, Porter for his performance as pool staff and Holly for sex-based discrimination based on Holly's statements to Plaintiff regarding women in the workplace. *Id* at ¶¶ 90-92. After complaining about these events to her supervisors, Porter and Holly were no longer brought to Plaintiff's work site. *Id* at ¶ 95.

Plaintiff was then transferred back to Roosevelt Pool Park in January of 2018. *Id* at ¶ 96. Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") on October 16, 2018 alleging discrimination on the basis of national origin, race, and gender as well as retaliation. *Id* at ¶ 90. The complaint was dismissed on December 28, 2018. *Id.* Plaintiff then commenced this instant action on June 20, 2019 alleging racial and sex based discrimination as well as relation under Title VII and the New York State Human Rights Law (the "NYSHRL"). *Id* at ¶ 2019; Pl. Compl. ¶ 1, ECF No. 1. Based on a motion to dismiss, the Honorable Judge Gary Brown dismissed Plaintiff's NYSHRL claims on May 26, 2020. *See* Minute Order, ECF No. 28. On August 24, 2022, Defendant moved for summary judgment on Plaintiff's remaining Title VII cases. Def. Mot. for Summ. J, ECF No. 54. The Honorable Judge Diane Gujarati then referred the motion to me for a Report and Recommendation. *See* Minute Order dated Oct. 28, 2022.

## JURISDICTION

This action is brought under Title VII, 42 U.S.C. § 2000e *et seq*. Jurisdiction is therefore based on 28 U.S.C. § 1331.

3

# LEGAL STANDARD

## I. Summary Judgment Standard

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## II. Title VII Standards

This Court applies the burden-shifting analysis established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) to discrete act claims brought under Title VII. *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 443 (2d Cir. 1999) (*abrogated on other*

4

*grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Under this analysis:

> "the plaintiff must first demonstrate a *prima facie* case of retaliation, after which the defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action. If the defendant meets its burden, the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Id.*

In order to demonstrate a *prima facie* claim of "racial or gender discrimination under Title VII, a claimant must show that: 1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry*, 336 F.3d at 138.

Similarly, in order show a *prima facie* claim of retaliation, "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected activity under [Title VII], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006)) (alterations incorporated)).

## DISCUSSION

### I.    Plaintiff's Time-Barred Claims.

Defendant argues in its memorandum of support for this motion for summary judgment that Plaintiff's discrimination and retaliation claims are both time-barred. Def. Br. 2-4, ECF No.

5

54-1. "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)). A complaint is considered timely if it is filed "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Stathatos v. Gala Res., LLC*, No. 06-CV-13138 (RLC), 2010 WL 2024967, *6 (S.D.N.Y. May 21, 2010).

In New York State, a complaint may be filed either with the EEOC or the NYSDHR within the three-hundred-day period and a complaint filed with the NYSDHR is "automatically deemed dual-filed with the EEOC." *Nieman v. Syracuse Univ. Off. of Hum. Res.*, No. 12-CV-732 (MAD) (TWD), 2013 WL 2445098, *3 (N.D.N.Y. June 5, 2013). Plaintiff filed her complaint with the NYSDHR on October 16, 2018. E.D.N.Y. L.R. 56.1 Statement ¶ 97, ECF No. 55-1. Thus, only factual allegations occurring on or after Wednesday, December 20, 2017, are timely. Any events occurring before that date are time-barred. 42 U.S.C. § 2000e-5(e)(1).

Plaintiff's claim for discrimination based on race and gender is based on (1) Plaintiff's transfer from her preferred park, Roosevelt Pool Park, to Coes Neck Park in October of 2017 and (2) that she was routinely denied promotions because of her race and gender. Pl. Opp. Brief 2-11, ECF No. 55. Plaintiff's retaliation claim is based on much of the same facts as well as additional conduct by other Parks Department employees while Plaintiff was stationed at Coes Neck Park. Pl. Compl. ¶ 62-69, ECF No. 1. Defendant claims that the facts underpinning all these rationales are time-barred. Def. Br. 2-4, ECF No. 54-1.

6

### a. Plaintiff's Transfer to Coes Neck is Time-Barred.

Plaintiff was transferred from Roosevelt Pool Park to Coes Neck Park in October of 2017, which is outside the applicable Title VII time period. E.D.N.Y L.R. 56.1 Statement ¶ 75, ECF No. 55-1. In defense of this, Plaintiff appears to argue that because Plaintiff's transfer lasted from October of 2017 to January 16, 2018, that the entire period may be considered as a series of discriminatory acts against Plaintiff. Pl. Opp. Br. 7, ECF No. 55. This argument is without merit.

In a claim for a discriminatory transfer the time limit to file a complaint begins "to run, at the latest . . . when [Plaintiff] received notice of the . . . decision to transfer her." *Hurtgam v. Lyndonville Cent. Sch.*, 446 Fed. Appx. 385, 386 (2d Cir. 2011). Plaintiff can cite to no authority, from this Court or otherwise, to support the premise that a discriminatory transfer may be considered within the statutory time period so long as some amount of the transfer period occurred within the three-hundred-day period. At its core, this equates to an argument that a discriminatory transfer spanning a specific period equates to a "continuing violation" under Title VII during that period. *Crosland v. City of New York*, 140 F. Supp. 2d 300, 306-07 (S.D.N.Y. 2001). However, in this Circuit "[i]t is well-established that transfers . . . are . . . discrete acts which do not constitute a continuing violation." *Id* at 308 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)). Therefore, for the purposes of Plaintiff's claim, the Title VII time period began to run on October 17, 2017 and Plaintiff's transfer to Coes Neck Park is therefore time-barred. As such, it cannot be considered as a basis for Plaintiff's discrimination claim.

### b. Some Conduct Underpinning Plaintiff's Failure to Promote and Retaliation Claims Falls Within the Three-Hundred-Day Period.

Plaintiff has testified that she requested promotions or salary increases several times during her lengthy career with Defendant. Pl. Opp. Br. 3-4, ECF No. 55. She alleges she has consistently been unable to secure such promotions while other, less qualified men and white employees are promoted. *Id*. Failure to promote claims are also discrete act claims, meaning a plaintiff must show "at least one instance where [she] applied for, and was denied, a specific promotion within the 300 days prior of [her] charge of discrimination." *Brannon v. City of New York*, Nos. 09-CV-4335 (LTS), 11-CV-3378 (LTS), 2016 WL 270399, *5 (S.D.N.Y. Jan 21, 2016). Upon review of the record, only one instance appears to fall within the three-hundred-day period, Plaintiff's request to be promoted to Groundskeeper III.[2] Pl. Opp. Br. 4, ECF No. 55. Any other requests for promotions or salary increases are time-barred.

Plaintiff bases her retaliation claim on largely the same facts underpinning her transfer to Coes Neck Park, her inability to secure promotions and salary increases, as well as alleged retaliatory conduct that occurred while she was stationed at Coes Neck Park. As discussed above, Plaintiff's transfer to Coes Neck Park is time-barred and cannot be considered, as are all requests for promotions other than Plaintiff's request to be promoted to Groundskeeper III. Plaintiff testified of two instances during her transfer to Coes Neck Park in which another supervisor, identified in the record as solely "Michelle," brought two workers to Plaintiff's job site who had been previously transferred away from working with Plaintiff because of their comments about

---

[2] The record is unclear as to the exact date Plaintiff expressed an interest in promotion to her supervisor during her transfer to Coes Neck Park. Plaintiff stated in her deposition that she believed the conversation occurred during December of 2017 or 2018, and later clarified that it was during her transfer. Def. Br., Ex. C, 261, 265, ECF No. 54-3. This would seem to place the conversation in December of 2017, as Plaintiff was transferred back to Roosevelt Pool Park prior to December of 2018. E.D.N.Y. L.R. 56.1 Statement ¶ 96, ECF No. 55-1. However, because the applicable time period for this action encompasses events occurring on or after December 20, 2017, it is unclear exactly whether Plaintiff's conversation is timely. On summary judgment, resolving all ambiguities in favor of the Plaintiff, I assume for the purposes of this motion that the conversation was timely. *Johnson*, 680 F.3d at 236.

8

her gender. E.D.N.Y. L.R. 56.1 Statement ¶ 89-95, ECF No. 55-1. I presume for the sake of this summary judgment motion that these allegations are timely and consider Plaintiff's retaliation claims on the merits.[3]

## II. Plaintiff's Remaining Claims Fail as a Matter of Law.

### a. Plaintiff Cannot Identity a Specific Promotion She Applied for to Support Her Failure to Promote Claim.

In order to make a successful claim for failure to promote under Title VII, a "plaintiff must ordinarily demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotations and citations omitted). Additionally, the Second Circuit requires that a plaintiff show more than that "a plaintiff generally requested promotion consideration," requiring instead a specific showing that the plaintiff "had filed a formal application and was rejected." *Id* at 226-27.

The specific position requirement is grounded in sound rationale. Absent such a requirement, fact finders would be "left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc." *Id* at 227; *see also Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 1998). Furthermore, employers would be left to "keep track of all employees who have generally

---

[3] Plaintiff testified that she recalled these incidents took place "around a month" after she had been transferred to Coes Neck Park. Def. Br., Ex. C, 201, ECF No. 54-3. This would place these events some time in November of 2017, which is outside the three-hundred-day period. However, given the proximity to the December 20, 2017, cutoff, and the ambiguity around the exact date, I presume these facts to be timely. *Johnson*, 680 F.3d at 236.

9

expressed interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply for." *Petrosino*, 385 F.3d at 227 (quoting *Brown*, 163 F.3d at 710) (modifications in original).

In defense of her claim, Plaintiff argues that she did apply for a position within the three-hundred-day period. Def. Opp. Br. 4, ECF No. 55. Specifically, Plaintiff claims she applied for the Groundskeeper III position during her transfer to Coes Neck Park. *Id.* However, the record makes clear that Plaintiff did not formally apply to any posted Groundskeeper III position during her transfer. When asked to clarify whether Plaintiff specifically asked her supervisor to be promoted to Groundskeeper III, Plaintiff responded:

> No. I said either I want to change my title or I want to change my salary. Either one would be fine for me. Def. Mot. for Summ. J., Exhibit C, 261, ECF No. 54-3.

Furthermore, Plaintiff testified that she did not contact anyone during the relevant period to determine if there was an actual Groundskeeper III position available. *Id* at 273. This is exactly the kind of general request for promotion consideration that the Second Circuit declined to accept in *Petrosino*, and I recommend the Court decline to do so here. 385 F.3d at 226-27.

Plaintiff also seemingly argues that political affiliation plays a role in promotion decisions in the Town of Hempstead. Pl. Opp. Br. 4-6, ECF No. 55. Plaintiff makes no claim for discrimination on the basis of political affiliation in her complaint, and so I interpret this assertion to mean that because promotions were allegedly given only to members of local Republican Clubs, vacancies were not posted by Defendant, thereby excusing her of the specific position requirement. *See id*. However, even in an instance where a vacancy was not posted, a plaintiff must still identify a specific opening and demonstrate that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled

10

or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227. There is no such evidence in the record to support such an argument.

As this conversation with Plaintiff's supervisor is the sole basis within the three-hundred-day period supporting her failure to promote claim, there is no evidence properly before the Court of Plaintiff formally applying to any position, let alone a position she was not selected for. As such, there is no evidentiary basis for her failure to promote claim. Plaintiff's failure to promote claim therefore fails as a matter of law.

### b. Plaintiff Cannot Show a Retaliatory Motive.

To survive summary judgment a Plaintiff claiming retaliation must show "evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected activity under [Title VII], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Fincher*, 604 F.3d at 720. However, Plaintiff's opposition to this motion for summary judgment makes no argument that these elements have been satisfied, and seems to abandon the merits of her retaliation argument entirely. *See* Pl. Reply Br. 9-10, ECF No. 56.

Even assuming the argument has been preserved, Plaintiff cannot point to any evidence in the record to support an inference that her supervisor harbored any retaliatory motive in not granting Plaintiff's promotion request or that any such motive played a part in Michelle's decision to bring two employees against whom Plaintiff had previous grievances with to her job site. While Plaintiff argues that her supervisor was aware of complaints Plaintiff was making regarding her treatment, it is uncontested that her supervisor had no knowledge of Plaintiff's previous lawsuits. E.D.N.Y. L.R. 56.1 Statement ¶¶ 40, 49, 58, 98-99, ECF No. 55-1. Yet

puzzlingly, Plaintiff alleges in her complaint that her supervisors' refusal to promote her was in retaliation for those same lawsuits. Pl. Comp. ¶ 65, ECF No. 1. The record is also devoid of any indication that Michelle knew of the previous lawsuits, undercutting Plaintiff's argument Michelle's conduct was retaliatory. E.D.N.Y. L.R. 56.1 Statement ¶ 94, ECF No. 55-1 (Plaintiff contesting that Michelle had no knowledge of the past lawsuits but conceding Plaintiff did not know whether or not Michelle knew of previous lawsuits.).

Furthermore, Plaintiff's last lawsuit against Defendant settled in 2002, and the terms of that settlement concluded in 2006 when Plaintiff was promoted to Park Crew Chief. *Id* at ¶¶ 56, 61, 69. A span of twenty years cannot support a temporal inference that Plaintiff's supervisor or Michelle harbored retaliatory motives. *See Gentile v. Porter*, 509 F. Supp. 2d 221, 242 (E.D.N.Y. 2007) (finding no inference of retaliatory motive as a matter of law where four months elapsed between the protected activity and alleged retaliatory act). Therefore, Plaintiff claim of retaliation cannot, as a matter of law, survive summary judgment.

## CONCLUSION

For the reasons given, I recommend that the Court GRANT Defendants' motion for summary judgment in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

       /s/  Steven Tiscione  
Steven L. Tiscione  
United States Magistrate Judge  
Eastern District of New York

Dated: Central Islip, New York  
      February 14, 2023